No. 24-1696

_____

# UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

_____

**DERRICK JACOBS,**

*Plaintiff/Appellant,*

v.

**CITY OF PHILADELPHIA, PHILADELPHIA DISTRICT ATTORNEY'S OFFICE, LAWRENCE S. KRASNER, TRACY TRIPP, LIEUTENANT JASON HENDERSHOT, INSPECTOR D F PACE, AND DENNIS WILSON,**

*Defendants/Appellees.*

_____

**Appeal from the Order of the United States District Court for the Eastern District of Pennsylvania Dated March 21, 2024 at No. 2:19-cv-04616 Granting Defendants' Motions for Summary Judgment**

_____

**BRIEF FOR APPELLEES, CITY OF PHILADELPHIA, LIEUTENANT JASON HENDERSHOT, INSPECTOR D F PACE, AND DENNIS WILSON**

_____

Kimberly Boyer-Cohen, Esquire
Marshall Dennehey, P.C.
2000 Market Street, 23RD Floor
Philadelphia, PA  19103
Pa. Atty. I.D. 84036
(215) 575-2707
Attorneys for Appellees, City of Philadelphia, Lieutenant Jason Hendershot, Inspector D F Pace, and Dennis Wilson

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................ ii

COUNTERSTATEMENT OF THE ISSUES............................................1

COUNTERSTATEMENT OF THE CASE.............................................2

I.    PROCEDURAL HISTORY ........................................................2

II.    STATEMENT OF FACTS........................................................5

SUMMARY OF THE ARGUMENT ..................................................14

ARGUMENT ..............................................................................17

I.    STANDARD OF REVIEW ......................................................17

II.    BECAUSE THIS COURT PREVIOUSLY AFFIRMED THE DISMISSAL OF PLAINTIFF'S CLAIM FOR MALICIOUS PROSECUTION AND THE DISMISSAL OF THE CLAIMS AGAINST THE CITY, THE JUDGMENT ENTERED BY THE DISTRICT COURT ON MARCH 21, 2024 MUST BE AFFIRMED .........................................................................19

III.    THE DISMISSAL OF PLAINTIFF'S CLAIM FOR FIRST AMENDMENT RETALIATION AGAINST THE POLICE DEFENDANTS MUST BE AFFIRMED BECAUSE THERE IS NO MERIT TO THE CLAIM AS A MATTER OF LAW.......................................................................21

    A.    The District Court's Order Should Be Affirmed Because Plaintiff Was Not Retaliated Against Based Upon The Exercise Of His First Amendment Rights.............................................................25

    B.    The Disruption Caused By Plaintiff's Speech To The Operations Of The PPD Demonstrate That Plaintiff Did Not Engage In Protected Activity ........................................................................................27

IV.    THE DISMISSAL OF PLAINTIFF'S CONSPIRACY CLAIM MUST BE AFFIRMED BECAUSE THERE IS NO MERIT TO THE CLAIM AS A MATTER OF LAW.......................................................................33

V.    THE DISTRICT COURT DID NOT ERR IN DENYING PLAINTIFF'S MOTIONS FOR RECUSAL .......................................................39

VI.    THE DISMISSAL OF PLAINTIFF'S WHISTLEBLOWER CLAIM AGAINST THE POLICE DEFENDANTS AND THE CITY MUST BE AFFIRMED BECAUSE THERE IS NO MERIT TO THE CLAIM AS A MATTER OF LAW ...................................................................................41

VII.   CONCLUSION .........................................................................48

CERTIFICATION OF BAR MEMBERSHIP ........................................................49

CERTIFICATE OF COMPLIANCE ........................................................................49

CERTIFICATE OF SERVICE .............................................................................50

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986)............................................18

<u>Barnes v. City of Coatesville</u>, 1993 U.S. Dist. LEXIS 9112 (E.D. Pa. June 28, 1993) ..............................................................................................................36

<u>Bechtel v. Robinson</u>, 886 F.2d 644 (3d Cir. 1989).................................................45

<u>Benningfield v. City of Houston</u>, 157 F.3d 369 (5th Cir. 1998) ..................... 25, 27

<u>Borough of Duryea, Pa. v. Guarnieri</u>, 131 S. Ct. 2488 (2011) ...............................28

<u>Bowman v. Mazur</u>, 435 Fed. Appx. 82 (3d Cir. 2011).....................................24, 42

<u>Brennan v. Norton</u>, 350 F.3d 399 (3d Cir. 2003)....................................................27

<u>Butt v. United Bhd. Of Carpenters & Joiners of Am.</u>, 999 F.3d 882 (3d Cir. 2021) ..............................................................................................................39

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986) ......................................................18

<u>Chipollini v. Spencer Gifts, Inc.</u>, 814 F.2d 893 (3d Cir. 1987), cert. denied, 483 U.S. 1052 (1987)..................................................................................................18

<u>Colwell v. Rite Aid Corp.</u>, 602 F.3d 495 (3d Cir. 2010) ........................................26

<u>Coulter v. Allegheny Cnty. Bar Ass'n</u>, 496 Fed. Appx. 167 (3d Cir. 2012)...........40

<u>Craig v. Rich Twp. High Sch. Dist. 227</u>, 736 F.3d 1110 (7th Cir. 2013)...............32

<u>Curinga v. City of Clairton</u>, 357 F.3d 305 (3d Cir. 2004) ................... 28, 30, 31, 32

<u>D.R. v. Middle Bucks Area Vocational Tech. Sch.</u>, 972 F.2d 1364 (3d Cir. 1992)35

<u>Deangelo v. Brady</u>, 185 Fed. Appx. 173 (3d Cir. 2006)........................................35

<u>Dennison v. Pennsylvania Dep't of Corr.</u>, 268 F. Supp. 2d 387 (M.D. Pa. 2003)...47

<u>Dique v. N.J. State Police</u>, 603 F.3d 181 (3d Cir. 2010) ........................................21

<u>Donohue v. Rineer</u>, 2012 U.S. App. LEXIS 12989 (3d Cir. June 26, 2012) ... 24, 42

<u>Epshteyn v. Court of Common Pleas Del. Cnty. PA</u>, 608 Fed. Appx. 92 (3d Cir. 2015) .......................................................................................................38

<u>Errington v. City of Reading</u>, 2022 WL 17336209 (3d Cir. Nov. 30, 2022) ... 25, 26

<u>Fera v. Baldwin Borough</u>, 350 Fed. Appx. 749 (3d Cir. 2009)........................ 24, 42

<u>Frazier v. City of Philadelphia</u>, 441 F. Supp. 3d 76 (E.D. Pa. 2020) .....................48

<u>Garcetti v. Ceballos</u>, 547 U.S. 410 (2006)......................................................22, 28

<u>Garvin v. City of Philadelphia</u>, 354 F.3d 215 (3d Cir. 2003)..................................44

<u>Goodman v. Mead Johnson & Company</u>, 534 F.2d 566 (3rd Cir. 1976) ................17

<u>Great Western Mining & Mineral Co. v. Fox Rothschild LLP</u>, 615 F.3d 159 (3d Cir. 2010) ..............................................................................................................38

<u>Hamer v. Brown</u>, 831 F.2d 1398 (8th Cir. 1987)....................................................22

Hankins v. Temple Univ., 829 F.2d 437 (3d Cir. 1987)..........................................17

Hara v. The PA Dep't. of Educ., 492 Fed. Appx. 266 (3d Cir. Aug. 15, 2012) ......28

Harter v. GAF Corp., 967 F.2d 846 (3d Cir. 1992) ................................................18

Harvard v. Cesnalis, 973 F.3d 190 (3d Cir. 2020)........................................... 35, 36

Hill v. Borough of Kutztown, 455 F.3d 225 (3d Cir. 2006)............................. 22, 28

Home Depot USA, Inc. v. Lafarge N. Am., Inc., 59 F.4th 55 (3d Cir. 2023).........20

Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ., 926 F.2d 505 (3d Cir. 1991).........................................................................................................36

Hull v. Freeman, 991 F.2d 86 (3d Cir. 1993) .........................................................20

Jacobs v. City of Philadelphia, 2022 WL 1772989 (3d Cir. June 1, 2022).. 3, 19, 40

Jacobs v. City of Philadelphia, 2023 WL 3529414 (3d Cir. Feb. 14, 2023) ............4

Jacobs v. City of Philadelphia, 836 Fed. Appx. 120 (3d Cir. 2020)............. 3, 19, 40

Judge v. Shikellamy Sch. Dist., 905 F.3d 122 (3d Cir. 2018) ................................26

Kimes v. Univ. of Scranton, 126 F. Supp. 3d 477 (M.D. Pa. 2015).......................47

Kliesh v. Redevelopment Auth. of Bucks Cnty., 2023 WL 5739841 (3d Cir. Sept. 6, 2023) ....................................................................................................................41

Kneipp v. Tedder, 95 F.3d 1199 (3d. Cir. 1996) ....................................................22

Kost v. Kozakiewicz, 1 F.3d 176 (3d Cir. 1993) .....................................................40

Liteky v. United States, 510 U.S. 540 (1994).........................................................40

Locurto v. Giuliani, 447 F.3d 159 (2d Cir. 2006)...................................................32

Lomaskin v. Siemens Med. Sols. USA, Inc., 820 Fed. Appx. 138 (3d Cir. 2020) 47, 48

Lu v. Young, 2024 WL 3160363 (3d Cir. June 25, 2024).......................................41

Lunderstadt v. Colafella, 885 F.2d 66 (3d Cir. 1989)................................. 34, 39, 42

Lutz v. Com., 505 A.2d 1356 (Pa. Cmwlth. 1986)..................................................48

Melzer v. Bd. of Educ. of City Sch. Dist. of City of New York, 336 F.3d 185 (2d Cir. 2003)..............................................................................................................33

Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977) ..........22

Munroe v. Cent. Bucks Sch. Dist., 805 F.3d 454 (3d Cir. 2015), as amended (Oct. 25, 2019)...............................................................................................................32

Nagle v. Alspach, 8 F.3d 141 (3d Cir. 1993)............................................... 34, 39, 42

O'Rourke v. Commonwealth of Pa., 778 A.2d 1194 (Pa. 2001) .............................43

Pickering v. Board of Education, 391 U.S. 563 (1968)................. 22, 27, 29, 31, 32

Pittman v. Martin, 569 Fed. Appx. 89 (3d Cir. 2014) ............................................38

Rankin v. McPherson, 483 U.S. 378 (1987)............................................................28

Robertson v. Allied Signal, Inc., 914 F.2d 360 (3d Cir. 1990) ...............................18

Rohner v. Atkinson, 118 A.3d 486 (Pa. Cmwlth. 2015) .........................................47

Securacomm Consulting, Inc. v. Securacom Inc., 224 F.3d 273 (3d Cir. 2000).....39

Simmons v. City of Philadelphia, 947 F.2d 1042 (3d Cir. 1991).............. 34, 39, 42

Sims v. City of Philadelphia, 2022 WL 1011216 (3d Cir. Apr. 5, 2022)......... 20, 21

Singletary v. Pennsylvania Dep't of Corr., 266 F.3d 186 (3d Cir. 2001) ...............44

Startzell v. City of Phila., Pa., 533 F.3d 183 (3rd Cir. 2008) ..................................35

Thomas v. Independence Twp., 463 F.3d 285 (3d Cir. 2006)..................................22

Thomas v. Shaw, 2015 U.S. App. LEXIS 20872 (3d Cir. Dec. 2, 2015)...............35

Tindle v. Caudell, 56 F.3d 966 (8th Cir. 1995) ...................................... 28, 31

Torres v. McLaughlin, 163 F.3d 169 (3rd Cir. 1998) ................................................17

Tyler v. City of Mountain Home, Ark., 72 F.3d 568 (8th Cir. 1995)......... 29, 30, 31

United States v. Pelullo, 399 F.3d 197 (3d Cir. 2005)..................................... 24, 40

United States v. Voigt, 89 F.3d 1050 (3d Cir. 1996)................................................40

Walker v. Coffey, 956 F.3d 163 (3d Cir. 2020)................................................ 20, 21

White v. School District of Philadelphia, 326 Fed. Appx. 102 (3d Cir. 2009) 24, 42

Williams v. LaCrosse, 179 Fed. Appx. 141 (3d Cir. 2006) ....................... 34, 39, 42

**Statutes**

234 Pa. Code § 556.10(b)(5).....................................................................................32

43 P.S. § 1422 .............................................................................. 43, 46, 47

43 P.S. § 1423 (a)........................................................................................... 43, 46

43 P.S. § 1424 ...........................................................................................................43

43 P.S. § 1424(b)......................................................................................................43

**Rules**

Fed.R.Civ.P. 15(c)(1) ...............................................................................................44

## COUNTERSTATEMENT OF THE ISSUES

1. Should the District Court's March 21, 2024 Order entering judgment be affirmed because this Court previously affirmed the dismissal of Plaintiff's claim for malicious prosecution and the dismissal of the claims against the City?

2. Should the District Court's March 21, 2024 Order entering judgment be affirmed because there is no merit to Plaintiff's claim for First Amendment retaliation against the Police Defendants?

3. Should the District Court's March 21, 2024 Order entering judgment be affirmed because there is no merit to Plaintiff's claim for conspiracy against the Police Defendants?

4. Should the District Court's March 21, 2024 Order entering judgment be affirmed because the District Court did not err in denying Plaintiff's motions for recusal?

5. Should the District Court's March 21, 2024 Order entering judgment be affirmed because there is no merit to Plaintiff's claim against the City and the Police Defendants for violation of the Pennsylvania Whistleblower Law?

*Suggested Answers: Yes*

## COUNTERSTATEMENT OF THE CASE[1]

## I.   PROCEDURAL HISTORY

Pro se Plaintiff/Appellant, Derrick Jacobs ("Plaintiff"), instituted this action in United States District Court for the Eastern District of Pennsylvania by filing a Complaint against the City Of Philadelphia (the "City"), Lawrence S. Krasner ("Krasner"), the Philadelphia District Attorney's Office (the "DA's Office"), and Tracy Tripp ("Tripp"), on October 4, 2019 and an Amended Complaint on November 8, 2019.  (App. 43).

On April 9, 2020, the Honorable Harvey Bartle, III, granted the Defendants' motion to dismiss, dismissing Plaintiff's federal claims with prejudice and declining to exercise supplemental jurisdiction over the state law whistleblower claim.  (App. 44; ECF 15, 4/9/20 Opinion).   On December 1, 2020, this Court vacated the dismissal of Plaintiff's First Amendment retaliation claim, § 1983 claim of conspiracy and claim under the Pennsylvania whistleblower statute and remanded for the District Court to allow Plaintiff to further amend his complaint, but affirmed

---

[1] Plaintiff's "Concise Statement of the Case" in his Appellant's Brief largely does not contain citations to the record in violation of Fed. R.A.P. 28(a)(6).  As a result, the City and the Police Defendants are providing a statement of the case in this Brief. Furthermore, because Plaintiff failed to include all necessary and relevant documents in his Appendix, the City and the Police Defendants will cite, where necessary, to the original documents involved with the District Court ECF Document Number, e.g. (Doc. #, Complaint, ¶ #), (Doc. #, Motion for Summary Judgment, p. #).

the dismissal of all other claims, including the § 1983 claims of defamation and of malicious prosecution under the Fourth Amendment.  See <u>Jacobs v. City of Philadelphia</u>, 836 Fed. Appx. 120, 122-123 (3d Cir. 2020).

Upon remand, Plaintiff filed several amended complaints, culminating with a Fourth Amended Complaint, which contained both his previous claims as well as new claims against additional defendants, including Defendants/Appellees, Lieutenant Jason Hendershot ("Hendershot"), Inspector D F Pace ("Pace"), and Dennis Wilson ("Wilson")(collectively, the "Police Defendants").  (App. 45; ECF 29, Fourth Amended Complaint).

By Order and Memorandum dated June 16, 2021, Judge Bartle granted the Motion to Dismiss the Fourth Amended Complaint.  (App. 46; ECF 35, 6/16/21 Opinion).  On June 1, 2022, this Court vacated the dismissal of Plaintiff's First Amendment retaliation claims against Tripp and the Police Defendants, the § 1983 claim of conspiracy against Tripp and the Police Defendants, and the claim under the Pennsylvania whistleblower statute, but affirmed the dismissal of all other claims and defendants.  See <u>Jacobs v. City of Philadelphia</u>, 2022 WL 1772989, *2-6 (3d Cir. June 1, 2022).

Upon remand, the District Court ordered Plaintiff to amend his complaint to identify the specific defendants he alleges to have violated the Pennsylvania Whistleblower Law.  (App. 47).  On July 14, 2022, Plaintiff filed his Fifth Amended

Complaint which pled only a claim under the Pennsylvania Whistleblower Law and identified the Defendants against whom it was being asserted, including the City and the Police Defendants.  (App. 47; ECF 42, Fifth Amended Complaint).  By Order dated August 8, 2022, the District Court determined that it would consider the Fourth and Fifth Amended Complaints together as the operative complaint.  (App. 47; ECF 46, 8/8/22 Order).

The District Court subsequently denied numerous motions of Plaintiff for leave to amend his complaint a sixth time.  (App. 47-49, 53).  The District Court also denied numerous motions of Plaintiff for recusal of Judge Bartle.  (App. 47-49, 51).

On October 20, 2022, Judge Bartle granted the motion of Defendants to dismiss Plaintiff's state whistleblower claims.  (App. 48-49; ECF 66, October 20, 2022 Memorandum; ECF 67, October 20, 2022 Order).  This Court dismissed Plaintiff's appeal for lack of appellate jurisdiction on the grounds that it was not an appealable order.  See Jacobs v. City of Philadelphia, 2023 WL 3529414, *1 (3d Cir. Feb. 14, 2023).

On December 29, 2023, Tripp filed a Motion for Summary Judgment.  (App. 57).  On that same date, the Police Defendants filed a Motion for Summary Judgment and supporting Statement of Facts and Brief.  (App. 57; ECF 171, Police Defendants Motion for Summary Judgment; ECF 172, Police Defendants' Statement of Facts; ECF 173; Police Defendants' Brief in Support).  In their Motion for Summary

Judgment and supporting documents, the Police Defendants argued that they were entitled to judgment in their favor on Plaintiff's First Amendment retaliation claim and conspiracy claim.   (ECF 171, Police Defendants' Motion for Summary Judgment; ECF 172, Police Defendants' Statement of Facts; ECF 173; Police Defendants' Brief in Support).   Plaintiff filed his responses to the Motions for Summary Judgment on January 12, 2024.  (App. 58).

On December 29, 2023, Plaintiff also filed a Motion for Summary Judgment. (App. 57).   The Police Defendants filed their response to Plaintiff's Motion for Summary Judgment on January 12, 2024.  (App. 58; ECF 178, Police Defendants' Response to Plaintiff's Motion for Summary Judgment).

By Order and Opinion dated March 21, 2024, Judge Bartle granted the Motions for Summary Judgment of Tripp and the Police Defendants and denied Plaintiff's Motion for Summary Judgment. (App. 3-37).  This appeal followed. (App 1-2).

## II.   <u>STATEMENT OF FACTS</u>

This case, which has a long and complicated history, can be stated concisely with regard to the City and the Police Defendants.  Plaintiff was a detective with the Philadelphia Police Department ("PPD") and was assigned to the Officer Involved Shooting Investigation ("OISI") Unit (the "Unit").   (ECF 29, Fourth Amended Complaint, p. 4).  Hendershot was the Commanding Officer for the OISI Unit and

was Plaintiff's supervisor.  (ECF 172-2, Hendershot Memorandum, p. 2; ECF 179-3, Tripp Deposition, p. 27).

On June 8, 2017, Plaintiff became involved in an OISI involving Police Officer Ryan Pownall ("Pownall").  (ECF 29, Fourth Amended Complaint, ¶ 1).  Plaintiff participated in the investigation and interviewed witnesses.  (ECF 42, Fifth Amended Complaint, ¶ 3).

The case was prosecuted by Tripp, an assistant district attorney in the DA's Office, who convened a grand jury.  (ECF 29, Fourth Amended Complaint, ¶ 4-5; ECF 42, Fifth Amended Complaint, ¶ 8-9; ECF 179-3, Tripp Deposition, p. 23-24).  Following a grand jury indictment of Pownall on a charge of murder, Plaintiff learned that Tripp had allegedly presented false, misleading and perjured testimony to the grand jury which resulted in the indictment of Pownall.  (ECF 29, Fourth Amended Complaint, ¶ 5, 8-11; ECF 42, Fifth Amended Complaint, ¶ 14-17).

On September 27, 2018, Plaintiff consulted with an attorney to explore his option of reporting Tripp's corruption and criminality.  (ECF 29, Fourth Amended Complaint, ¶ 12).  After Tripp heard information which led her to believe that a member of the Unit had talked to Pownall's attorney and leaked grand jury information, she contacted Hendershot to find out who had done so.  (ECF 29, Fourth Amended Complaint, ¶ 13-14; ECF 179-3, Tripp Deposition, p. 33-36).  When Hendershot relayed his conversation with Tripp to Plaintiff, Plaintiff admitted he

was the one who had spoken to the attorney to find out how to expose Tripp's criminality. (ECF 29, Fourth Amended Complaint, ¶ 15-18). Hendershot then relayed his conversation with Plaintiff to Tripp. (ECF 29, Fourth Amended Complaint, ¶ 19).

On November 9, 2018, Plaintiff was questioned by Tripp in front of the grand jury about whether he had spoken with any attorneys representing Pownall about the Pownall shooting, and he responded by invoking his Fifth Amendment privilege against self-incrimination. (ECF 177-1, Jacobs Deposition, p. 3 (p. 143), 4 (p. 149)). Tripp never initiated a criminal proceeding against Plaintiff and informed Plaintiff in August 2019 that the grand jury investigation with respect to the leak was not going to proceed further and was closed. (ECF 179-3, Tripp Deposition, p. 32, 85-86). Tripp also informed Hendershot that were was no criminal prosecution against Plaintiff and therefore no charges to withdraw. (ECF 179-3, Tripp Deposition, p. 94-95).

On January 18, 2020, Plaintiff appeared on a podcast titled "Search Warrant: Clear and Present Danger" (the "Podcast"). (ECF 172-1, Hendershot Memorandum; ECF 172-11, Podcast Transcript). On the Podcast, Plaintiff made the following statements about the OISI unit, its staffing, and its investigative procedures:

- The unit that I'm assigned to investigates all police discharges that happens in the city and county of Philadelphia.

- There's six detectives and two supervisors.

- We're on call at issue 24 hours a day, 7 days a week. So we have set of working hours, but anything outside of those hours, would be on call.

- Certain detectives go to the scene. We divvy up the responsibilities when an investigation happens. Some officers stay at headquarters. Some go out to the scene. And some do other investigative tasks that is needed at the time.

(ECF 172-11, Podcast Transcript, p. 8-10). Plaintiff also described in detail the

investigation of Pownall, including his own interviews of eyewitnesses:

> After the shooting occurred, of course we [OISI] were dispatched to handle the investigation. I interviewed the majority of the fact witnesses of this case….I also interviewed a gentleman that gave a statement that was pro police but was not in line with the investigation. And he later recanted his observations…Based on Mr. Freeman's account, which was the adult witness in the back of Officer Pownall's vehicle…everything in the investigation lined up, which led me to believe that the shooting was justified.
>
> ***
>
> I interviewed a gentleman by the name of John Ellis. Mr. Ellis is the gentleman who lied in favor of Officer Pownall.
>
> ***
>
> So she [Tripp] had Mr. Freeman's interview…[S]he had all this information at her disposal before she impaneled this grand jury.

(ECF 172-11, Podcast Transcript, p. 10-12, 28, 43-44). Plaintiff further recounted

his conversations with prosecutors who handled the matter, and disparaged the

District Attorney's Office as operating "almost like a criminal enterprise." (ECF

172-11, Podcast Transcript, p. 75). He also disparaged Tripp:

She's [Tripp] the worst of the worst in our profession…If you're corrupt, you're corrupt.

\*\*\*

And that's why you have prosecutorial misconduct by ADA Tripp.  When she goes into a grand jury or she starts the grand jury proceeding, and she knows that what she's going to be providing to the grand jury is false, misleading, or perjury, then we have problems here.

\*\*\*

Because what she's doing is a crime.  What she did in the grand jury is a crime, what she's doing against me is a crime.

\*\*\*

I've been an investigator for 20 years.  I worked homicide…I'm sure I could present and put together my case to have Tripp arrested.  I mean, I have enough evidence for probable cause.

(ECF 172-11, Podcast Transcript, p. 36, 43, 46, 49).

At the time of the Podcast, the PPD had directives in effect restricting public statements by police officers.  Specifically, Directive 4.16, which pertains to "Public Affairs and Release of Information to the Public" (the "Public Affairs Directive"), and Directive 6.10, which pertains to "Social Media and Networking" (the "Social Media Directive"), prohibit dissemination of confidential information by police officers.  The Public Affairs Directive provides that police officers shall not release information that "violate[s] privacy rights or jeopardize[s] ongoing investigations or prosecutions," would "adversely affect…the investigation or prosecution of a crime"

9

or "disclose information relative to deployment or staffing." (ECF 172-4, Directive 4.16, Section 2.A. & 3.B.). The Social Media Directive also prohibits police officers from using "personal insults" and "material that is harassing [or] defamatory." (ECF 172-3, Directive 6.10, Section 4.I.). The Social Media Directive further provides that, "when engaging in personal use of social media, employees shall not post any…audio…related to current, past, or pending department investigation; (2) criminal or civil proceeding pertaining to arising from any matter involving the department, including allegations of misconduct. (ECF 172-3, Directive 6.10, Section 5.C.2.d.).

The directives allow for narrow exceptions to the general prohibition on disseminating confidential information with permission from a higher-ranking official in the department. (ECF 172-3, Directive 6.10, Section 3.B.2.a.; ECF 172-4, Directive 4.16, Sections 3.F., 3.G.d. & 3.H.2.). However, even with permission, police officers must limit their statements to "circumstances immediately surrounding the arrest, including the time and place of arrest, resistance, pursuit, possession and use of weapons " and must not make "any statements as to the merits of the case." (ECF 172-4, Directive 4.16, Sections 3.G.d. & 3.H.2.). Significantly, only "members of Public Affairs upon conferral with the appropriate Deputy Commissioner" may disseminate "[a]ny information related to a Police involved discharge/shooting." (ECF 172-4, Directive 4.16, Section 3.I.3.).

While Plaintiff now maintains he received oral permission from Wilson, the Deputy Commissioner, on November 26, 2019 to "go public with my corruption allegations," a January 27, 2020 memorandum from Plaintiff to Wilson makes no reference to permission from Wilson to "go public" before Plaintiff participated in the Podcast and certainly does not indicate that Wilson gave Plaintiff permission to appear on the Podcast.  (ECF 172-6, Investigation Interview, p. 3; ECF 172-12, Wilson Memorandum, p. 2-4).  To the contrary, the memorandum confirms that Wilson told Plaintiff to use proper channels and contact the Pennsylvania Attorney General's Office to report his concerns.  (ECF 172-12, Wilson Memorandum, p. 2; ECF 177-4, Wilson Deposition, p. 6 (p. 163); ECF 179-1, Wilson Deposition, p. 65, 164).

In addition, on January 30, 2020, nearly two weeks after the Podcast, Plaintiff sent a memorandum to Police Commissioner Christine Coulter seeking "permission to release information to the media upon request regarding corruption reported in my Federal lawsuit."  (ECF 172-7, Coulter Memorandum).  The document was stamped "Disapproved" by the Chief Inspector of the Detective Bureau on February 3, 2020 and by the Deputy Commissioner on February 6, 2020.  (ECF 172-7, Coulter Memorandum).  In addition, handwritten notes read, "This violated PPD Policy re: release info to media" and "Note 2-6-2020.  Law Dept reviewed.  Denial is consistent with department policy."  (ECF 172-7, Coulter Memorandum).

Following the Podcast, Hendershot conducted an Administrative Internal Investigation in response to the confidential information revealed by Plaintiff during the Podcast. (ECF 172-2, Hendershot Memorandum; ECF 172-6, Investigation Interview, p. 2). As part of Hendershot's investigation, he interviewed Plaintiff on January 30, 2020 in the presence of Plaintiff's Union representative, during which Plaintiff admitted that he did not receive the required approval prior to sharing the information about the OISI Unit on the Podcast. (ECF 172-6, Investigation Interview, p. 3).

On February 3, 2020, as a result of the interview, Hendershot sent a memorandum to the Police Board of Inquiry ("PBI") requesting that Plaintiff be charged with the appropriate sections of the PPD Disciplinary Code. (ECF 172-2, Hendershot Memorandum; ECF 172-8, Pace Deposition, p. 9). Hendershot's memorandum was endorsed as being approved by the chief inspector of the detective bureau on February 3, 2020 and then by Wilson on February 6, 2020. (ECF 172-8, Pace Deposition, p. 14-16).

On February 12, 2020, Pace, the Commanding Officer of the PBI Charging Unit, decided to levy charges against Plaintiff for, among other things, communicating law enforcement information without authority to do so and failing to maintain professionalism as a result of his comments during the Podcast. (ECF 172-5, Charges; ECF 172-8, Pace Deposition, p. 7-8, 11; ECF 177-5, Pace

Deposition, p. 4 (p. 106)).  The potential penalty for the charges ranged from a reprimand up to dismissal.  (ECF 172-5, Charges).  Plaintiff pled not guilty and requested a hearing.  (ECF 172-5, Charges, p. 2).

Following the charges, Plaintiff "ran" his time – i.e. did not physically report to work but got paid through his banked sick, personal and vacation time.  (ECF 177-3, Jacobs Deposition, p. 3 (p. 267, 300)).  On March 12, 2021, after he used all of his accrued time, Plaintiff decided to voluntarily retire and filed his retirement papers.  (ECF 172-9, Separation Documentation; ECF 177-3, Jacobs Deposition, p. 3 (p. 267)).  Plaintiff was never told he was being terminated and, at the time he retired, the disciplinary charges remained pending and a hearing had not yet been held.  (ECF 172-9, Separation Documentation; ECF 177-3, Jacobs Deposition, p. 3 (p. 268)).

## SUMMARY OF THE ARGUMENT

On March 21, 2024, the District Court entered judgment in favor of Defendants.  Plaintiff first claims on appeal that the District Court erred when it dismissed his claim for malicious prosecution and his claims against the City.  However, this Court previously affirmed the dismissal of these claims, and the law of the case precludes the reconsideration of these claims.

Next, Plaintiff claims the District Court erred in dismissing his First Amendment retaliation claim against the Police Defendants.  As a preliminary matter, although the District Court clearly indicated that it was dismissing this claim because the interest of the Police Department in promoting the efficiency of the public services it performs through its employees outweighed the interest of the employee (the Plaintiff) in commenting on any matter of public concerns and because Plaintiff did not suffer retaliation, Plaintiff has not addressed these elements in his Brief.  As a result, Plaintiff has waived any claim of error with respect to the District Court's dismissal of his First Amendment retaliation claim against the Police Defendants.  To the extent Plaintiff has not waived this argument, the dismissal of the First Amendment retaliation claim against the Police Defendants is fully supported by the District Court's decision.

Plaintiff also claims the District Court erred in dismissing his conspiracy claim.  However, Plaintiff has waived any argument that the District Court erred in

dismissing the conspiracy claim because he does not provide any legal citation to support his argument or otherwise identify or point out which facts support his claim or were ignored by the District Court. Even assuming this Court does not find Plaintiff's argument to be waived, the dismissal of the conspiracy claim against the Police Defendants is fully supported by the District Court's decision.

In the District Court, Plaintiff filed four motions seeking the recusal of Judge Bartle, all of which were denied, and Plaintiff now contends the District Court erred in denying his recusal requests. However, Plaintiff has waived any claim of error with respect to the District Court's denial of the recusal motions by completely failing to cite any authority regarding the elements and standards relevant to recusal and not indicating how the District Court erred in denying such motions. To the extent this Court deems such an argument not to be waived, the District Court did not abuse its discretion in denying Plaintiff's motions for recusal.

Finally, Plaintiff argues that the District Court erred in dismissing Plaintiff's state law whistleblower claim against the Police Defendants and the City. Although the District Court clearly indicated that it was dismissing Plaintiff's claim under the Whistleblower Law because the majority of the violations alleged by Plaintiff are time-barred and because his allegations fail to assert conduct that is actionable, Plaintiff has not adequately addressed these determinations in his Brief. As a result, Plaintiff has waived any claim of error with respect to the dismissal of his

whistleblower claim against the Police Defendants and the City.  Assuming this Court does not find this issued to be waived, Plaintiff's argument that the District Court erred in dismissing his claim under the Whistleblower Law is without merit, and this Court should affirm the October 10, 2022 Order dismissing the whistleblower claim against the Police Defendants with prejudice.

As a result, the District Court properly dismissed Plaintiff's claims against the Police Defendants and the City, and the March 21, 2024 judgment must be affirmed.

## **ARGUMENT**

### **I.   STANDARD OF REVIEW**

Plaintiff argues on appeal that the District Court erred in granting summary judgment in favor of Defendants.  The scope of this Court's review of the District Court's order granting summary judgment in favor of Defendants is plenary.  Torres v. McLaughlin, 163 F.3d 169, 170 (3d Cir. 1998).  In reviewing summary judgment, this Court must apply the same test the District Court was required to use.  Goodman v. Mead Johnson & Company, 534 F.2d 566, 573 (3d Cir. 1976).  This Court has described the standard for summary judgment as follows:

> Summary judgment may be entered if "the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  An issue is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.  Where the record, taken as a whole, could not "lead a rational trier of fact to find for the nonmoving part, summary judgment is proper."

Hankins v. Temple Univ., 829 F.2d 437, 445 (3d Cir. 1987)(internal citations omitted).

Once the moving party has shown an absence of evidence to support the claims of the nonmoving party, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'deposition, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for

trial.'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).  If the nonmovant bears the burden of persuasion at trial, "the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial."  <u>Chipollini v. Spencer Gifts, Inc.</u>, 814 F.2d 893, 896 (3d Cir. 1987), cert. denied, 483 U.S. 1052 (1987).

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion.  The requirement is that there is no genuine issue of material fact.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-248 (1986).  Furthermore, the mere existence of a scintilla of evidence in support of the opposing party's position is insufficient.  <u>Id.</u> at 252.  Finally, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or conjecture or speculation in attempting to survive a summary judgment motion.  <u>See Harter v. GAF Corp.</u>, 967 F.2d 846, 852 (3d Cir. 1992)(at summary judgment an opponent cannot "merely rely upon conclusory allegations in [its] pleadings or in memoranda and briefs); <u>Robertson v. Allied Signal, Inc.</u>, 914 F.2d 360, 382-383 n.12 (3d Cir. 1990)(mere conjecture or speculation by the non-moving party will not provide a basis upon which to deny the motion).

**II.  BECAUSE THIS COURT PREVIOUSLY AFFIRMED THE DISMISSAL OF PLAINTIFF'S CLAIM FOR MALICIOUS PROSECUTION AND THE DISMISSAL OF THE CLAIMS AGAINST THE CITY, THE JUDGMENT ENTERED BY THE DISTRICT COURT ON MARCH 21, 2024 MUST BE AFFIRMED**

On March 21, 2024, the District Court entered judgment in favor of Defendants.  (App. 3).  Plaintiff claims on appeal that the District Court erred when it dismissed his claim for malicious prosecution and his claims against the City.  (Brief of Appellant, p. 8-12, 16).  However, Plaintiff's argument is wholly without merit.

As previously explained, on April 9, 2020, Judge Bartle granted the Defendants' motion to dismiss, dismissing Plaintiff's claims with prejudice, including his malicious prosecution claim.  (ECF 15, 4/9/20 Opinion, p. 6-7).  This Court affirmed the dismissal of Plaintiff's malicious prosecution claim on December 1, 2020.  See Jacobs, 836 Fed. Appx. at 122-123 (3d Cir. 2020).  Again on June 16, 2021, Judge Bartle granted the Motion to Dismiss the Fourth Amended Complaint, dismissing Plaintiff's claims with prejudice, including a reasserted malicious prosecution claim and any purported claims against the City.  (ECF 35, 6/16/21 Opinion, p. 6, 7, 28-30).  The dismissal of these claims was affirmed by this Court on June 1, 2022.  See Jacobs, 2022 WL 1772989 at *2 n. 4.

The law of the case doctrine, which applies within the same case, "prevents reconsideration of legal issues already decided in earlier stages of a case."  Home

Depot USA, Inc. v. Lafarge N. Am., Inc., 59 F.4th 55, 61 (3d Cir. 2023); see also Walker v. Coffey, 956 F.3d 163, 170 (3d Cir. 2020)(the law of the case doctrine dictates that "one panel of an appellate court generally will not reconsider questions that another panel has decided on a prior appeal in the same case"); Hull v. Freeman, 991 F.2d 86, 90 (3d Cir. 1993)(relitigation of issues previously determined in the same litigation is controlled by principles of the law of the case doctrine).  The doctrine fosters "the finality and efficiency of the judicial process by protecting against the agitation of settled issues." Walker, 956 F.3d at 170.  This Court can reconsider previously decided issues only under "extraordinary circumstances," such as if new evidence becomes available, a supervening law has been introduced, or the prior decision was "clearly erroneous and would create manifest injustice." Id.; see also Sims v. City of Philadelphia, 2022 WL 1011216, *1 (3d Cir. Apr. 5, 2022)(where the plaintiff appealed the District Court's denial of her attempts to reassert her causes of action after this Court previously affirmed the dismissal of the plaintiff's claims, this Court affirmed and found that, pursuant to the law of the case, there was no basis for it to reconsider the previously decided issues and the plaintiff had set forth no basis to find "extraordinary circumstances" that would justify relief).

Similarly, in this matter, Plaintiff has not alleged, let alone established, the existence of any extraordinary circumstances that would establish a basis for this Court to reconsider the previously decided dismissal of his malicious prosecution

claim or claims against the City.  As a result, the law of the case precludes the reconsideration of these claims, and the judgment entered by the District Court on March 21, 2024 must be affirmed.  See Sims, 2022 WL 1011216, at *1; see also Walker, 956 F.3d at 170 (3d Cir. 2020)(affirming the District Court's order dismissal of plaintiff's second amended complaint because this Court had previously decided the issuing in affirming the dismissal of the plaintiff's original complaint, which was the law of the case, and the plaintiff did not allege, much less establish, that extraordinary circumstances existed to justify reconsidering the issue).

### III.    THE DISMISSAL OF PLAINTIFF'S CLAIM FOR FIRST AMENDMENT RETALIATION AGAINST THE POLICE DEFENDANTS MUST BE AFFIRMED BECAUSE THERE IS NO MERIT TO THE CLAIM AS A MATTER OF LAW

In the March 21, 2024 Order, Judge Bartle dismissed Plaintiff's First Amendment retaliation claim against the Police Defendants.  (App. 25-34).  On appeal, Plaintiff argues that the District Court erred in making this determination.  However, Plaintiff's argument is without merit, and this Court should affirm the March 21, 2024 Order dismissing the First Amendment retaliation claim against the Police Defendants with prejudice.

Section 1983 of the United States Code provides a cause of action for an individual to pursue a claim for an alleged violation of her Constitutional rights.  Dique v. N.J. State Police, 603 F.3d 181, 185 (3d Cir. 2010).  To prove a claim under §1983, a plaintiff must demonstrate a "deprivation of a right secured by the

Constitution and the laws of the United States…by a person acting under color of State law." <u>Kneipp v. Tedder</u>, 95 F.3d 1199 (3d. Cir. 1996).

To support a First Amendment retaliation claim, a plaintiff has the initial burden to prove: (1) that his or her activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action of his or her employer.  <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 241 (3d Cir. 2006); <u>see</u> <u>also</u> <u>Mt. Healthy City School Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 287 (1977).  "The first factor is a question of law; the second factor is a question of fact." <u>Hill</u>, 455 F.3d at 241.[2]

The First Amendment allows a public employer to regulate its employees' speech in ways it could never regulate the general public's.  <u>Pickering v. Board of Education</u>, 391 U.S. 563, 568 (1968).  While "[p]ublic employees are not, by virtue of becoming public employees, shorn of First Amendment protection," <u>Hamer v. Brown</u>, 831 F.2d 1398, 1401(8th Cir. 1987), "[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 418 (2006).  The Supreme Court has

---

[2] The pertinent standard has also been stated as requiring a plaintiff to establish "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." <u>Thomas v. Independence Twp.</u>, 463 F.3d 285, 296 (3d Cir. 2006).  The first and third steps of the test are subsumed within the test referred to above.

recognized, accordingly, that "[g]overnment employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." Id. Therefore, a public employer has a legitimate interest in regulating the speech and other rights of its employees, and where an employee's First Amendment rights come into conflict with an employer's interests, the task is to arrive at a balance between the respective interests of the employee and the employer. Pickering, 391 U.S. at 568.

In its March 21, 2024 Memorandum, the District Court granted summary judgment in favor of the Police Defendants because the interest of the Police Department in promoting the efficiency of the public services it performs through its employees outweighed the interest of the employee (the Plaintiff) in commenting on any matter of public concerns and because Plaintiff did not suffer retaliation[3]. (App. 28-34). As a preliminary matter, although the District Court clearly indicated that it was dismissing Plaintiff's First Amendment retaliation claim on this basis, Plaintiff has not addressed these elements of a First Amendment retaliation claim in his Brief. As a result, Plaintiff has waived any claim of error with respect to the District Court's March 21, 2024 dismissal of this cause of action against the Police

---

[3] For purposes of ruling on the Motion for Summary Judgment, the District Court assumed Plaintiff's speech involved a matter of public concern. (App. 28).

Defendants. See Donohue v. Rineer, 2012 U.S. App. LEXIS 12989, *2-3 (3d Cir. June 26, 2012)(citing United States v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005)("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal.")); Bowman v. Mazur, 435 Fed. Appx. 82, 84 n.1 (3d Cir. 2011)(finding issue waived where it was not so much as mentioned in appellant's pro se informal opening brief); Fera v. Baldwin Borough, 350 Fed. Appx. 749, 752-753 (3d Cir. 2009)(finding waiver where pro se appellant's opening brief did not identify any facts that were overlooked by the District Court, let alone explain how such facts warrant a different outcome in this case); White v. School District of Philadelphia, 326 Fed. Appx. 102, 104-105 (3d Cir. 2009)(deeming issues to be waived where the plaintiff did not contest certain findings of the District Court in his opening brief).

Even assuming Plaintiff has not waived his argument, Plaintiff claims on appeal that the District Court erred because a genuine issue of material fact exists. However, Plaintiff's argument is wholly without merit, and the dismissal of the First Amendment retaliation claim against the Police Defendants is fully supported by the District Court's decision.

**A.    The District Court's Order Should Be Affirmed Because Plaintiff Was Not Retaliated Against Based Upon The Exercise Of His First Amendment Rights**

Even if an employee establishes the existence of a protected activity, the employee must still show that some adverse employment action was taken against the employee.  Errington v. City of Reading, 2022 WL 17336209, *2 (3d Cir. Nov. 30, 2022).  Courts have required that the nature of the retaliatory acts committed by a public employer be more than de minimis or trivial.  Brennan v. Norton, 350 F.3d 399, 419 (3d Cir. 2003).  A public employer adversely affects an employee's First Amendment rights when it makes decisions which relate to promotion, transfer, recall and hiring based on the exercise of an employee's First Amendment rights." Id.  "On the other hand, courts have declined to find that an employer's actions have adversely affected an employee's exercise of his First Amendment rights where the employer's alleged retaliatory acts were criticism, false accusations, or verbal reprimands."  Id.; see also Benningfield v. City of Houston, 157 F.3d 369, 376–77 (5th Cir. 1998)(holding that employees "falsely accused" of criminal wrongdoing and "verbally reprimanded" by their employer failed to allege adverse employment actions sufficient to constitute retaliation), cert. denied, 526 U.S. 1065 (1999).

A voluntary retirement is not an adverse employment action, and retirements are presumed voluntary unless they are caused by coercion, duress, or deception. Errington, 2022 WL 17336209, at *2.  Courts consider a non-exhaustive list of

factors to evaluate whether a retirement is a constructive discharge, including (1) whether the employee was given an alternative to resignation; (2) did he understand his choice; (3) whether he had a reasonable amount of time to decide; (4) whether he could select the effective date of the resignation; and (5) did he have the opportunity to gain the advice of counsel. Id. (citing Judge v. Shikellamy Sch. Dist., 905 F.3d 122, 125-26 (3d Cir. 2018)).

Plaintiff decided to voluntarily retire and filed his retirement papers on March 12, 2021. (ECF 172-9, Separation Documentation; ECF 177-3, Jacobs Deposition, p. 3 (p. 267)). Moreover, Plaintiff has failed to rebut the presumption that his resignation was voluntary. Notably, Plaintiff pled not guilty to the charges and requested a hearing. (ECF 172-5, Charges, p. 2). As the District Court indicated, Plaintiff had the option to dispute the charges at his disciplinary hearing and the Police Defendants did not prohibit Plaintiff from seeking the advice of counsel. (App. 33-34). In addition, Plaintiff was never told he was being terminated and, at the time he retired, the disciplinary charges remained pending and a hearing had not yet been held. (ECF 172-9, Separation Documentation; ECF 177-3, Jacobs Deposition, p. 3 (p. 268)). Thus, as the District Court found, Plaintiff did not plead conditions so unpleasant that a reasonable person would feel forced to resign. (App. 34 (citing Errington, 2022 WL 17336209, at *2; Colwell v. Rite Aid Corp., 602 F.3d 495, 502 (3d Cir. 2010)).

Plaintiff has also failed to demonstrate that the Police Defendants took any other retaliatory action against him such as demoting him, docking his pay, or placing him on administrative leave while the charges were pending.   To the contrary, following the charges being levied, Plaintiff voluntarily chose to "run" his time – i.e. did not physically report to work but got paid through his banked sick, personal and vacation time – and immediately submitted his retirement papers once he used his accrued time.  (ECF 177-3, Jacobs Deposition, p. 3 (p. 267, 300)).  Given that the charges themselves also did not constitute retaliatory action, see Brennan v. Norton, 350 F.3d 399, 419 (3d Cir. 2003); Benningfield, 157 F.3d at 376–77, Plaintiff has not sufficiently alleged one of the necessary elements for pleading a First Amendment retaliation claim, and the March 21, 2024 Order can be affirmed on this basis alone.

**B.    The Disruption Caused By Plaintiff's Speech To The Operations Of The PPD Demonstrate That Plaintiff Did Not Engage In Protected Activity**

Even if this Court were to conclude that Plaintiff suffered a retaliatory action, it must proceed to the Pickering balancing test to determine whether the speech is protected.  A public employee's statement is "protected activity" only where (1) the employee spoke as a citizen (2) about a matter of public concern and (3) "the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the

statement he made." Hill, 455 F.3d at 241-42 (quoting Garcetti, 547 U.S. at 418).

When assessing whether the government employer's justification is adequate, "[c]ourts balance the First Amendment interest of the employee against 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" Borough of Duryea, Pa. v. Guarnieri, 131 S. Ct. 2488, 2493 (2011)(quoting Pickering, 391 U.S. at 568).  Taking "into account the extent of authority entailed in the employee's position," this "balancing test considers 'whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise.'" Curinga v. City of Clairton, 357 F.3d 305, 310 (3d Cir. 2004)(quoting Rankin v. McPherson, 483 U.S. 378, 388 (1987)); see also Tindle v. Caudell, 56 F.3d 966, 971–72 (8th Cir. 1995)("The need for harmony and close working relationships between co-workers in a police department is of great importance.").  Actual disruption is not necessary provided that the speech "has some potential to affect the entity's operations." Garcetti, 547 U.S. at 418; see also Hara v. The PA Dep't. of Educ., 492 Fed. Appx. 266, 268 (3d Cir. Aug. 15, 2012).

Even assuming Plaintiff's version of events is correct – that he was retaliated against for exercising his First Amendment rights – under the foregoing balancing

test, the Police Defendants would have been justified in taking adverse employment action against him.  Plaintiff's participation in the Podcast had the potential to affect not only the performance of Plaintiff's duties but the operations of the PPD as a whole.

First, Plaintiff's participation in the Podcast had a detrimental effect on close working relationships.  It is undisputed that, during the Podcast, Plaintiff accused Tripp of being a criminal and the Philadelphia District Attorney's Office of operating "almost like a criminal enterprise."  (ECF 172-11, Podcast Transcript, p. 36, 43, 46, 49, 75).  Plaintiff also admitted that, as part of the OISI Unit, he would investigate police involved shootings, interview witnesses, and relay his findings to the assigned district attorney.  (ECF 42, Fifth Amended Complaint, ¶ 3; ECF 172-11, Podcast Transcript, p. 8-10, 14).  Thus, many of the assertions made by Plaintiff on the Podcast were directed against persons with whom he "would normally be in contact in the course of his daily work[.]"  Pickering, 391 U.S. at 569-570.  As a result, Plaintiff completely undermined not only his relationship and any trust and confidence with the District Attorney's office that would follow, but that of the PPD, and jeopardized the PPD's interest in maintaining a close working relationship with District Attorney's Office.  Accordingly, Plaintiff's statements are not protected speech.  See Tyler v. City of Mountain Home, Ark., 72 F.3d 568, 570 (8th Cir. 1995)(the district court correctly found that an amicable working relationship

between the two law enforcement agencies was important); <u>Curinga</u>, 357 F.3d at 310 (balancing test looks at whether the statement has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary).

Plaintiff also harmed his working relationship with his superiors when he acted outside of the chain of command.  In <u>Tyler</u>, <u>supra</u>, a sergeant in the Mountain Home Police Department brought a Section 1983 action against the chief of police and the city for violating his right to free speech after he was demoted for writing a letter to a sergeant in the Baxter County Sheriff's Department complaining that certain Sherriff's Department deputies had violated a policy of both the Police and Sheriff's Departments regarding alcohol breath tests.  <u>Tyler</u>, 72 F.3d at 569.  The Court of Appeals upheld the grant of summary judgment on the ground that the plaintiff did not engage in protected conduct, explaining that "a police department has a more significant interest than the typical government employer in regulating the speech activities of its employees" because "police departments function as paramilitary organizations charged with maintaining public safety and order."  <u>Id.</u> at 570.  By acting outside of the chain of command, the plaintiff "called into question his working relationship with his superior officers and at least potentially impaired the police chief's ability to control the actions of his subordinates."  <u>Id.</u>

Here, Plaintiff likewise acted outside of the chain of command when he discussed confidential police information on the Podcast without permission from

his superiors. His actions not only violated the PPD's Directives but also went against the explicit guidance of his superior officer who told Plaintiff to use proper channels and contact the Pennsylvania Attorney General's Office to report his concerns. (ECF 172-3, Directive 6.10; ECF 172-4, Directive 4.16; ECF 172-12, Wilson Memorandum, p. 2; ECF 177-4, Wilson Deposition, p. 6 (p. 163); ECF 179-1, Wilson Deposition, p. 65, 164). Thus, as in <u>Tyler</u>, Plaintiff endangered the effectiveness of his working relationship between himself and his superiors, and his statements are not protected. <u>See</u> <u>Tyler</u>, 72 F.3d at 569; <u>see also</u> <u>Curinga</u>, 357 F.3d at 310 (balancing test looks at whether the statement impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise); <u>Tindle</u>, 56 F.3d at 971–72 ("The need for harmony and close working relationships between co-workers in a police department is of great importance."); <u>Pickering</u>, 391 U.S. at 570 n.3 ("positions in public employment in which the relationship between superior and subordinate is of such a personal and intimate nature that certain forms of public criticism of the superior by the subordinate would seriously undermine the effectiveness of the working relationship between them can also be imagined").

Finally, Plaintiff was one of only six detectives in a special position of trust in the OISI Unit charged with investigating police shootings. (ECF 29, Fourth Amended Complaint, p. 4; ECF 172-11, Podcast Transcript, p. 8-10). As an investigator in the Pownall matter, he was sworn to secrecy before the Pownall grand

jury.  (ECF 172-11, Podcast Transcript, p. 17-18).  Nevertheless, during the Podcast, Plaintiff identified two witnesses, Freeman and Ellis, whose statements matched those in the Pownall grand jury's presentment.  (ECF 172-11, Podcast Transcript, p. 10-12, 28, 43-44).  The names of witnesses in the presentment are redacted because Pennsylvania law prohibits "pretrial discovery" of "testimony or other evidence that would disclose the identity of any witness or victim" in order to protect such persons from intimidation.  234 Pa. Code § 556.10(b)(5).  In this regard, the need for Plaintiff to maintain confidentiality as to the identity of witnesses in a grand jury proceeding was "so great" that revealing such information furnished "permissible grounds for dismissal."  Pickering, 391 U.S. at 570, n. 3.  Accordingly, his speech was not protected under the First Amendment.  See Curinga, 357 F.3d at 310 (balancing test considers whether the statement impedes the performance of the speaker's duties); Munroe v. Cent. Bucks Sch. Dist., 805 F.3d 454, 474 (3d Cir. 2015), as amended (Oct. 25, 2019)(finding it was appropriate to consider whether the plaintiff's speech "would erode the necessary trust and respect" between the plaintiff and those she was hired to serve); Craig v. Rich Twp. High Sch. Dist. 227, 736 F.3d 1110, 1119 (7th Cir. 2013)(an employer has more leeway in restricting the speech of an employee whose position requires contact with the public); Locurto v. Giuliani, 447 F.3d 159, 183 (2d Cir. 2006)(finding that the defendants' interest in maintaining a relationship of trust between the police and fire departments and the communities

they serve outweighed the plaintiffs' expressive interests, and the First Amendment does not require a Government employer to sit idly by while its employees insult those they are hired to serve and protect); <u>Melzer v. Bd. of Educ. of City Sch. Dist. of City of New York</u>, 336 F.3d 185, 198–99 (2d Cir. 2003)(looking at whether plaintiff's return to his teaching post would compromise the learning environment, particularly because of his effect on his constituencies).

As a result, the District Court correctly dismissed Plaintiff's First Amendment retaliation claim against the Police Defendants, and the March 21, 2021 Order should be affirmed.

## IV.    THE DISMISSAL OF PLAINTIFF'S CONSPIRACY CLAIM MUST BE AFFIRMED BECAUSE THERE IS NO MERIT TO THE CLAIM AS A MATTER OF LAW

Plaintiff purports to assert a conspiracy claim against all Tripp and the Police Defendants pursuant to 42 U.S.C. § 1983, which was dismissed by the District Court in its March 21, 2024 Memorandum.  (App. 34-35).  As a preliminary matter, Plaintiff suggests in his Brief that the District Court erred in dismissing the conspiracy claim.  (Brief of Appellant, p. 16).  However, Plaintiff's only argument in support of this assertion is that "[t]he defendants acted in concert to deprive the plaintiff of a right protected by the United States Constitution.  Based upon the facts the District Court erred in denying the plaintiff's claim of conspiracy."  (Brief of Appellant, p. 16).  Plaintiff does not provide any legal citation to support his

argument or otherwise identify or point out which facts support his claim or were ignored by the District Court.  As a result, Plaintiff has waived any argument that the District Court erred in dismissing the conspiracy claim.  See Williams v. LaCrosse, 179 Fed. Appx. 141, 141 n.1 (3d Cir. 2006)("Mr. Williams's opening brief contains no argument or citation to authority with regard to his property interest and equal protection claims.  Therefore he has abandoned these claims."); Nagle v. Alspach, 8 F.3d 141, 143 (3d Cir. 1993)("When an issue is either not set forth in the statement of issues presented or not pursued in the argument section of the brief, the appellant has abandoned and waived that issue on appeal."); Simmons v. City of Philadelphia, 947 F.2d 1042, 1065 (3d Cir. 1991)("absent extraordinary circumstances, briefs must contain statements of all issues presented for appeal, together with supporting arguments and citations"); Lunderstadt v. Colafella, 885 F.2d 66, 78 (3d Cir. 1989)("the appellant's brief shall contain under appropriate headings a 'statement of the issues presented for review' and…the argument section of the brief [must] 'contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on.'").

Even assuming this Court does not find Plaintiff's argument to be waived, it is without merit.  To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law reached an understanding to

deprive him of his constitutional rights.  Harvard v. Cesnalis, 973 F.3d 190, 207 (3d Cir. 2020).  This requires that the state actors took "concerted action" based on an "agreement" to deprive the plaintiff of his constitutional rights, and that there was an actual underlying constitutional violation of the plaintiff's rights.  Id.

To prevail on a conspiracy claim, a plaintiff cannot rely merely on subjective suspicions and unsupported speculation.  Thomas v. Shaw, 2015 U.S. App. LEXIS 20872, *8 (3d Cir. Dec. 2, 2015).  To the contrary, to properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred.  D.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1377 (3d Cir. 1992).  "[I]t is a longstanding rule in the Third Circuit that a mere general allegation or averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient to state a claim."  Deangelo v. Brady, 185 Fed. Appx. 173, 175 (3d Cir. 2006).  Thus, "[w]ithout more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556-557 (2007).  Moreover, "[t]o constitute a conspiracy, there must be a 'meeting of the minds.'"  Startzell v. City of Phila., Pa., 533 F.3d 183, 205 (3rd Cir. 2008); Twombly, 550 U.S. at 556 (requiring "enough factual matter (taken as true) to suggest that an agreement was made").

Although his Fourth Amended Complaint is not divided into specific counts, Plaintiff's conspiracy claim seems to center primarily on his contention that the Police Defendants conspired amongst themselves and/or with Tripp to retaliate against him in violation of his First Amendment rights.  First, as explained by the District Court (App. 34) and in this Brief, there is no underlying violation of Plaintiff's First Amendment rights as a matter of law based upon the undisputed facts of record as discussed herein.  Without any viable underlying violation of Plaintiff's constitutional rights, there can be no conspiracy claim under Section 1983.  Harvard, 973 F.3d at 207.  Therefore, the Police Defendants are entitled to judgment in their favor as to Plaintiff's Section 1983 conspiracy claim on this basis alone.

Next, to the extent Plaintiff is contending the Police Defendants conspired amongst themselves, a government entity and its employees cannot conspire among themselves.  Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ., 926 F.2d 505, 510 (3d Cir. 1991)(dismissing claim where a conspiracy was alleged between a school district superintendent, the executive director of the district, and a school administrator, all of whom are employees or agents of the Board because all of the defendants were members of the same collective entity so that there were not two separate "people" to form a conspiracy); Barnes v. City of Coatesville, 1993 U.S. Dist. LEXIS 9112, *28 (E.D. Pa. June 28, 1993)(explaining that the

"intracorporate conspiracy" doctrine has been applied to hold that township officials acting in their official capacities cannot enter into a conspiracy with their municipality).  On this basis alone, Plaintiff's conspiracy claim against the Police Defendants fails as a matter of law.

Finally, to the extent Plaintiff contends the Police Defendants conspired with Tripp, Plaintiff has failed to allege facts sufficient to establish a "meeting of the minds" and has not and cannot establish the requisite specific intent necessary to support a claim for conspiracy.  As the District Court explained:

> There is also nothing in the record to show any agreement among Defendants to violate his rights.  Beginning with the alleged criminal prosecution, there is no evidence of any involvement by Deputy Commissioner Wilson and Inspector Pace.  Separately, Tripp's conversations with Lieutenant Hendershot following the bypass hearing are not evidence of any agreement.  Lieutenant Hendershot was simply relaying information to Tripp without any purpose or plan of action to violate Jacobs's rights.
>
> As to the Philadelphia Police Department's disciplinary charges against Jacobs, there is no evidence that Tripp had any involvement.  Deputy Commissioner Wilson merely referred the matter to Inspector Pace after being notified of the podcast.  Lieutenant Hendershot and Inspector Pace separately and independently conducted investigations into the podcast.  They never met on the subject and separately determined that disciplinary charges were appropriate because Jacobs have violated several directives.  There is simply no evidence of conspiracy.

(App. 35).

Simply asserting that there was a "coordinated plan" or a "conspiracy" in place

is not sufficient to raise Plaintiff's right to relief above the speculative level. Twombly, 550 U.S. at 555; Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 178 (3d Cir. 2010)(refusing to consider any conclusory allegations that there was "a corrupt conspiracy," "an agreement," or "an understanding in place between the defendants because the conclusory nature of allegations make them unacceptable).  Plaintiff has not succeeded in alleging any specific factual allegations of combination or understanding among all, or any, of the Police Defendants to plot, plan or conspire to carry out the alleged chain of events.  As the Supreme Court noted, allegations of parallel conduct does not "nudge[]…claims across the line from conceivable to plausible" where there is an "obvious alternative explanation" for the parallel conduct and "no reason to infer that [Defendants] agreed among themselves to do what was only natural anyway…" Twombly, 550 U.S. at 566-567, 570.  Thus, the record cannot support the drawing of a reasonable inference that any of the Police Defendants took these alleged actions in furtherance of a conspiracy to retaliate against Plaintiff, and the March 21, 2024 Order should be affirmed.  See Epshteyn v. Court of Common Pleas Del. Cnty. PA, 608 Fed. Appx. 92  (3d Cir. 2015)(conclusory allegations of a conspiracy fail to state a claim); Pittman v. Martin, 569 Fed. Appx. 89 (3d Cir. 2014)(finding that plaintiff presented only conclusory allegations of conspiracy, which are insufficient from a pleading perspective).

**V.      THE DISTRICT COURT DID NOT ERR IN DENYING PLAINTIFF'S MOTIONS FOR RECUSAL**

In the District Court, Plaintiff filed four motions seeking the recusal of Judge Bartle, all of which were denied.  (App. 47-49, 51).  Plaintiff now contends the District Court erred in denying his recusal requests.  (Brief of Appellant, p. 16-24).  However, Plaintiff has completely failed to cite any authority regarding the elements and standards relevant to recusal and has in no way indicated how the District Court erred in denying such motions.  As a result, Plaintiff has waived any claim of error with respect to the District Court's denial of the recusal motions.  See Williams, 179 Fed. Appx. at 141 n.1; Nagle, 8 F.3d at 143; Simmons, 947 F.2d at 1065; Lunderstadt, 885 F.2d at 78.

To the extent this Court deems such an argument not to be waived, this Court reviews the District Court's orders denying the motions to recuse for abuse of discretion.  See Butt v. United Bhd. Of Carpenters & Joiners of Am., 999 F.3d 882, 891 (3d Cir. 2021); Securacomm Consulting, Inc. v. Securacom Inc., 224 F.3d 273, 278 (3d Cir. 2000).  Here, the District Court did not abuse its discretion in denying Plaintiff's Motions for Recusal.

Plaintiff's argument is premised primarily on his contention that the dismissal of his complaint and other rulings against him are proof that Judge Bartle was biased against him and in favor of Defendants.  However, this Court has "repeatedly stated that a party's displeasure with legal rulings does not form an adequate basis for

recusal." <u>Coulter v. Allegheny Cnty. Bar Ass'n</u>, 496 Fed. Appx. 167, 169 (3d Cir. 2012); <u>see</u> <u>also</u> <u>Liteky v. United States</u>, 510 U.S. 540, 555 (1994)("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion.").

In his Brief, Plaintiff claims the District Court has denied every motion filed by him and granted every motion filed by Defendants and refers specifically to approximately nine rulings of the District Court to support his argument. (Brief of Appellant, p. 17-24). Notably, the majority of the rulings he references are not the subject of his appeal and he has not asked this Court to reverse those rulings or presented any argument to demonstrate that the rulings were in error. As a result, any challenge to those rulings has been waived. <u>See</u> <u>Pelullo</u>, 399 F.3d at 222 ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal."); <u>United States v. Voigt</u>, 89 F.3d 1050, 1064 n. 4 (3d Cir. 1996)("The failure to raise a theory as an issue on appeal constitutes waiver"); <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 182 (3d Cir. 1993)(holding that all issues must be raised and argued in the opening brief). Furthermore, as discussed throughout this Brief, the District Court correctly dismissed Plaintiff's Fourth and Fifth Amended Complaints, and this Court already affirmed the dismissal of the majority of Plaintiff's claims and defendants. <u>See</u> <u>Jacobs</u>, 2022 WL 1772989 at *2-6; <u>Jacobs</u>, 836 Fed. Appx. at 122-123. In addition, this Court has indicated that Plaintiff was not prejudiced by the District Court's decision to treat his new

complaint as an amended complaint instead of a new civil action because the court let him assert both his old claims and his new claims and allowed two more amendments. <u>Jacobs</u>, 2022 WL 1772989 at *1 n.1. As a result, Plaintiff has not demonstrated that the District Court abused its discretion in denying his motions for recusal. <u>See</u> <u>Lu v. Young</u>, 2024 WL 3160363, *1–2 (3d Cir. June 25, 2024)(concluding there was no basis requiring the District Judge's recusal); <u>Kliesh v. Redevelopment Auth. of Bucks Cnty.</u>, 2023 WL 5739841, *2 (3d Cir. Sept. 6, 2023)(finding no abuse of discretion in the District Court's decision not to recuse and disagreeing that the dismissal of the complaint and the other rulings against the plaintiff were proof that Judge Goldberg was biased in favor of the defendants).

## VI.  THE DISMISSAL OF PLAINTIFF'S WHISTLEBLOWER CLAIM AGAINST THE POLICE DEFENDANTS AND THE CITY MUST BE AFFIRMED BECAUSE THERE IS NO MERIT TO THE CLAIM AS A MATTER OF LAW

On October 10, 2022, the District Court dismissed Plaintiff's state law whistleblower claim against the Police Defendants. (ECF 66, 10/20/22 Memorandum). As a preliminary matter, the District Court clearly indicated that it was dismissing Plaintiff's claim under the Whistleblower Law because the majority of the violations alleged by Plaintiff are time-barred and because his allegations fail to assert conduct that is actionable. (ECF 66, 10/20/22 Memorandum, p. 11-14, 16-17). Nevertheless, Plaintiff has not addressed the timeliness of his claims in his Brief except to generally state that the "District Court erred and DISMISSED the plaintiff's

claims as time barred against all defendants." (Brief of Appellant, p. 29). Plaintiff also has not provided any discussion or argument regarding what conduct taken by the Police Defendants was actionable under the Whistleblower Law. As a result, Plaintiff has waived any claim of error with respect to the District Court's dismissal of his claim under the Whistleblower Law against the Police Defendants and the City. See Donohue, 2012 U.S. App. LEXIS 12989 at *2-3; Bowman, 435 Fed. Appx. at 84 n.1; Fera, 350 Fed. Appx. at 752-753; White, 326 Fed. Appx. at 104-105; Williams, 179 Fed. Appx. at 141 n.1; Nagle, 8 F.3d at 143; Simmons, 947 F.2d at 1065; Lunderstadt, 885 F.2d at 78.

Assuming this Court does not find this issued to be waived, Plaintiff argues on appeal that the District Court erred in dismissing his claim under the Whistleblower Law. However, Plaintiff's argument is without merit, and this Court should affirm the October 10, 2022 Order dismissing the whistleblower claim against the Police Defendants with prejudice.

The Pennsylvania Whistleblower Law provides:

> No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act.

43 P.S. § 1423 (a).   Under the Whistleblower Law, "wrongdoing" is defined as a "violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." 43 P.S. § 1422.   To state a claim under the Whistleblower Law, a plaintiff must first prove that he "reported or was about to report in good faith, verbally or in writing, an instance of wrongdoing or waste to the employer or an appropriate authority" prior to the alleged retaliatory act.   See 43 P.S. § 1424(b); see also O'Rourke v. Commonwealth of Pa., 778 A.2d 1194, 1200 (Pa. 2001).   Once the employee establishes a prima facie case, the burden shifts to the employer to "prove that it would have taken the same adverse employment action absent the employee's good-faith report of wrongdoing." O'Rourke, 778 A.2d at 1204; see also 43 P.S. § 1424(c). A person who alleges a violation of the Whistleblower Law must bring his civil action within 180 days after the occurrence of the alleged violation. 43 P.S. § 1424.

As a preliminary matter, the District Court determined that the majority of the violations alleged by Plaintiff are time-barred. (ECF 66, 10/20/22 Memorandum, p. 11-15).   Plaintiff commenced this action on October 4, 2019 against Krasner, Tripp and the City.   It was not until Plaintiff filed his Second Amended Complaint on January 25, 2021 that Plaintiff alleged violations of the Whistleblower Law by the Police Defendants.   In order for the whistleblower claims against the Police

Defendants to relate back to the original Complaint, three conditions must be met. See Singletary v. Pennsylvania Dep't of Corr., 266 F.3d 186, 194 (3d Cir. 2001). Specifically, 1) the amendment must assert a claim or defense that arose out of the conduct or occurrence set out in the original pleading; 2) the newly named defendant must have received notice of the action within 90 days of the filing of the original complaint; and 3) within 90 days of the filing of the original complaint, the newly named defendant must have known or should have known that the action would have been brought against him but for a mistake concerning the proper party's identity. Fed.R.Civ.P. 15(c)(1).  The burden of proving each of the three conditions rests on the plaintiff.  Garvin v. City of Philadelphia, 354 F.3d 215, 222 (3d Cir. 2003).

As the District Court found, the claims asserted against the Police Defendants in the Second Amended Complaint do not relate back to the original Complaint because Plaintiff describes conduct in the Second Amended Complaint that occurred after the date of his original pleading and none of the conduct alleged in the original Complaint involves the PPD or its officers.  (ECF 1, Complaint; ECF 24, Second Amended Complaint; ECF 66, 10/20/22 Memorandum, p. 12).  In addition, Plaintiff has not demonstrated that the Police Defendants had notice of the original Complaint within 90 days after its filing nor that they could have known when the original Complaint was filed that the action would have been brought against them but for a mistake concerning the proper party's identity.  See Garvin, 354 F.3d at 222 (finding

the district court correctly held that it could not impute notice where the individual police officers sought to be added qualified as non-managerial employees and, as a result, did not share a sufficient nexus of interests with their employer, the City); Bechtel v. Robinson, 886 F.2d 644, 652 n. 12 (3d Cir. 1989)(the notice received must be more than notice of the event that gave rise to the cause of action; it must be notice that the plaintiff has instituted the action). As a result, for statute of limitations purposes, any alleged violations by the Police Defendants must have occurred no earlier than July 25, 2020 in order to be within 180 days of the filing of the Second Amended Complaint on January 25, 2021. Because Plaintiff's allegations against Pace and Wilson all involve violations which occurred prior to January 25, 2021, the dismissal of the Whistleblower Law claims against them must be affirmed. (ECF 42 & 42-1, Fifth Amended Complaint; ECF 66, 10/20/22 Memorandum, p. 14).

With respect to Hendershot, the alleged conduct which occurred after July 25, 2020 was Hendershot's alleged failure to respond to Plaintiff's memoranda requesting investigation of his allegations of prosecutorial misconduct and Hendershot's alleged interception of Plaintiff's memoranda to the Police Commissioner. (ECF 42-1, Fifth Amended Complaint, ¶ 291; ECF 66, 10/20/22 Memorandum, p. 16). However, Plaintiff does not claim and has not demonstrated that these alleged actions by Hendershot affected his compensation, terms,

conditions, location or privileges of employment.  As a result, Plaintiff's allegations fail to assert conduct that is actionable under the Whistleblower Law.  See 43 P.S. § 1423 (a) (the Law prohibits an employer from discharging, threatening or otherwise discriminating or retaliating against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment).

Even if the disciplinary action taken against Plaintiff can constitute the required adverse employment action, the record is clear that charges were brought against Plaintiff for his participation in the Podcast.  (ECF 172-2, Hendershot Memorandum; ECF 172-5, Charges).  However, the Whistleblower Law only protects reports made to an "appropriate authority," which is defined as "[a] Federal, State or local government body, agency or organization having jurisdiction over criminal law enforcement, regulatory violations, professional conduct or ethics, or waste; or a member, officer, agent, representative or supervisory employee of the body, agency or organization.  43 P.S. § 1422; 43 P.S. § 1423.  Here, Plaintiff was informed numerous times that the PPD was not the proper authority for complaints against the District Attorney's office and that he should use proper channels and contact the Pennsylvania Attorney General's Office to report his concerns.  (ECF 172-12, Wilson Memorandum, p. 2; ECF 177-4, Wilson Deposition, p. 6 (p. 163); ECF 179-1, Wilson Deposition, p. 65, 164).  Nevertheless, Plaintiff chose to air his concerns on the Podcast.  As a result, Plaintiff's appearance on the Podcast was not

a report to an appropriate authority and is not protected by the Whistleblower Law. See Dennison v. Pennsylvania Dep't of Corr., 268 F. Supp. 2d 387, 406–07 (M.D. Pa. 2003)(the plaintiff's release of prison records to a prison reform advocate, a local NAACP official, and Fox–TV News did not constituted protected activity).

In addition, Plaintiff cannot succeed on a whistleblower claim based on alleged wrongdoing by the District Attorney's office. First, the Whistleblower Law requires that the plaintiff prove there was an actual "violation" of the laws, regulations, ordinance, or code of conduct or ethics "which is not of a merely technical or minimal nature[.]" See 43 P.S. § 1422. Nevertheless, Plaintiff has not indicated which law Tripp or any other member of the District Attorney's office purportedly violated. As a result, Plaintiff has not asserted a claim under the Whistleblower Law. See Kimes v. Univ. of Scranton, 126 F. Supp. 3d 477, 505–06 (M.D. Pa. 2015)(although the plaintiff reported that Captain Cadugan purportedly fraudulently altered a police report, she failed to connect that action with the violation of any Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics).

Moreover, Plaintiff's claim fails because a report of wrongdoing must relate to a violation of a law or regulation that the employer is charged with enforcing. See Lomaskin v. Siemens Med. Sols. USA, Inc., 820 Fed. Appx. 138, 141 (3d Cir. 2020)(citing Rohner v. Atkinson, 118 A.3d 486, 491 (Pa. Cmwlth. 2015)). It is the

Attorney General's office which has authority to investigate and prosecute any alleged criminal offenses in the District Attorney's office. See Lutz v. Com., 505 A.2d 1356, 1357 (Pa. Cmwlth. 1986). Since the PPD is not responsible for ensuring the District Attorney's compliance with the law or its internal policies, Plaintiff's claim under the Whistleblower Law fails. See Lomaskin, 820 Fed. Appx. at 141.

Finally, Plaintiff's claim for violation of the Whistleblower Law against the City fails because Plaintiff has not asserted any viable violation by any of the Police Defendants. See Frazier v. City of Philadelphia, 441 F. Supp. 3d 76, 97 (E.D. Pa. 2020)(under the Whistleblower Law, traditional respondeat superior principles apply, allowing an employer to be held liable for the actions of its employees).

## VII.  CONCLUSION

For the above-stated reasons, the Police Defendants and the City respectfully ask that this Court affirm the District Court's March 21, 2024 entry of judgment in their favor.

Respectfully submitted,

**MARSHALL DENNEHEY, P.C.**

By:  */s/ Kimberly A. Boyer-Cohen*
　　　Kimberly A. Boyer-Cohen, Esquire
　　　Counsel for Appellees, City of Philadelphia,
　　　Lieutenant Jason Hendershot, Inspector D F Pace,
　　　and Dennis Wilson

## CERTIFICATION OF BAR MEMBERSHIP

The undersigned hereby certifies that, pursuant to 3rd Circuit Local Appellate Rules 28.3(d), Kimberly A. Boyer-Cohen, Esquire, is a member of the bar of the Third Circuit.

## CERTIFICATE OF COMPLIANCE

1.     This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 11,293 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14 point Times New Roman.

3.     The undersigned hereby certifies that the text of the electronic brief is identical to the text of the paper copies, and the McAfee VirusScan Enterprise 8.0.0 detection program has been run on the file and no virus has been detected.

**MARSHALL DENNEHEY, P.C.**

By:   */s/ Kimberly A. Boyer-Cohen*
             Kimberly A. Boyer-Cohen, Esquire
             Counsel for Appellees, City of Philadelphia,
             Lieutenant Jason Hendershot, Inspector D F Pace,
             and Dennis Wilson

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date set forth below I served the foregoing Brief

of Appellees upon all parties via ECF.


**MARSHALL DENNEHEY, P.C.**

By: _/s/ Kimberly A. Boyer-Cohen_
           Kimberly A. Boyer-Cohen, Esquire
           Counsel for Appellees, City of Philadelphia,
           Lieutenant Jason Hendershot, Inspector D F Pace,
           and Dennis Wilson

Date: August 1, 2024